MRS. G. B. MITCHEM v. D. W. MITCHEM.

(Filed 5 May, 1915.)

**1. Instructions—Fraud—Confidential Relations.**

In an action to set aside a transaction for fraud arising from the confidential relationship of the parties, an exception ·to the charge of the court that there was no evidence of such relationship is not.sustained when it appears from the charge that the court instructed the jury that the confidential relationship existing would not create the presumption of fraud.

**2. Equity — Vendor and Purchaser — Contracts — Rescission—Instructions— False Representations.**

In an action to rescind a sale of a business for fraud, the evidence was conflicting as to whether the vendor represented that the net profits were in a certain sum, or that the gross profits were in that amount, the former being the alleged false representations relied upon by the plaintiff, and it is held no error for the judge to have instructed the jury to answer in plaintiff's favor if the representation was made as to the net profits, but for the defendant if made as to the gross profits, with the burden of proof on the plaintiff.

**3. Appeal and Error—Assignments of Error—Oral Agreement.**

Oral agreements in the Supreme Court upon matters neither embraced in the assignments of error nor referred to in the printed brief will not be considered.

APPEAL by plaintiff from *Shaw, J.,* at September Term, 1914, of GASTON.

This is an action brought for the purpose of rescinding a contract of sale and to recover damages, the plaintiff alleging that she was induced to purchase a one-half interest in a·livery business upon the false and

fraudulent representation of the defendant that the net income from the business at the time of the sale was $300 per' month and that the property sold was worth $1,400.

His Honor charged the jury that the plaintiff could not sustain her action upon the representation as to the value of the property, to which there was no exception, and the case was tried upon the allegation that the defendant made the representation alleged as to the profits per month.

The plaintiff testified as follows: "My name is Gabrilla Mitchem; the defendant is my brother-in-law, my husband's brother; he advised me on buying some land; told me how much to give, and he had Mr. Mason there to tell me how far to go, and I stopped when he told me to stop. I did not go to him any time prior to the transaction about the livery stable for advice about business affairs, only that time. In reference to this time, I will say he sent up there—Joe came up there and said 'Papa sent after me to come down there; that he wanted me to buy a half interest in the livery stable.' I went down there, and I wasn't there but a few minutes until he got to talking to me about the stable; said he wanted to sell and wanted me and Joe to buy it; said the whole thing was worth $1,400 and wanted me to buy half and wanted Joe to take the other; and I said, 'Dave, I don't know anything about the livery business,' and he said I knew enough, and advised me to take it and to take his advice, and told me my half would be $700, and told me to take it and Joe would take the other half, and in six months it would pay for itself; and I said, 'Have a living out of it, too?' and he said, 'Yes; it does that now, and will do it on,' and I said, 'It will be making right smart money for me out of the little bit I have got.' I had a little bit, and I wanted to put it in something that would make me a little more. He said for me to take that and I could make a living, and it would pay for itself in six months, and Joe said, 'Papa, say twelve months; I think that we can make it in twelve months,' and he said, 'You can make it in six months,' and he named over the horses and buggies and one surry, I believe; said six horses and seven buggies, or seven buggies and six horses, I won't be sure. I did not see the property myself; I told him I would not know if I would go look at them; just took it that they would be what he said. I really never saw them until I moved down there. He said everything was in good condition and would make that money. I paid him $500 at the time, I believe it was. After I got down there I found out I wasn't getting anything, and I asked them where the money was, and they said they wasn't hardly making expenses; and about six weeks after I was down there, between four and six, Dave came through the yard and I said, 'Stop a little bit; I want to talk to you. I am just ruined in this thing,' and he said, 'Why?' and

I said, 'Because what money I got is in this,' and I said, 'Take it back off my hands for $600 and let me go home,' and he just laughed at me and said, 'I don't want it'; and I said, 'Dave, take it back; you can get it off and I can't; take it for $600 and let me go back home; I can live there, and I can't live here,' and he laughed and said he would see if he could not help me get shut of it, and he walked off and left me, and I left it there; left Harvey there, my son, and I come home; I had it to do; was getting in debt for house rents and not making anything. The horses were just worn-out shacks; there was about six; I did not call them valuable; the best horse there only had one eye, the best buggy horse; one was a little faster. I never examined the buggies. Defendant gave his reason for selling out that he wanted to sell it; wanted to send his little boys to school; was going to send Ed. off to school and could not do it and keep the stable. He did not send him to school while I stayed there. Joe and Dave were there every night or every day when Joe run up the pay-roll to find out what they had made. I don't know who got the money; I did not get it; did not receive anything from it."

The jury returned the following verdict:

1. Was the plaintiff induced to purchase a half interest in the livery business from the defendant by means of false and fraudulent representation by the defendant, as alleged in the complaint? Answer: "No."

2. If so, what damage is plaintiff entitled to recover? Answer: "Nothing."

Judgment was rendered in favor of the defendant and the plaintiff appealed, assigning the following errors:

1. The court erred in charging the jury that there was no evidence of confidential relationship existing between the parties.

2. The court erred in charging the jury that unless they found by greater weight of evidence that D. W. Mitchem told Mrs. G. B. Mitchem that he was making a profit of $300 a month they would answer the first issue "No"; that if they found that what he told Mrs. Mitchem was that he was taking in $300 a month, then there would be no false representation, and they would answer the first issue "No."

3. The court erred in charging the jury that plaintiff was not entitled to rescission of contract, for that no offer to return the property had been made; that the property had passed out of possession of plaintiff and she was therefore in no position to restore it and could not have a rescission of contract.

4. The court erred in not allowing the motion of plaintiff's counsel to set aside the verdict and for new trial.

*J. F. Flowers and George W. Wilson for plaintiff.*
*Mason & Mason and Mangum & Woltz for defendant.*

ALLEN, J.  1. The first assignment of error is not sustained by the record.  His Honor did not charge the jury that there was no evidence of confidential relationship existing between the parties.  He did, however, say: "Ordinarily, gentlemen, where this confidential relationship exists as to a transaction passing between the parties, the presumption is that it is fraudulent; but the court instructs you, gentlemen, that there is no evidence of this confidential relation existing between the plaintiff and the defendant that would create a presumption in the case at all," and counsel for the plaintiff admits that, upon the evidence introduced upon the trial, this was a correct statement of the law.

2. We find no error in that part of the charge to the jury embraced in the second assignment of error.  His Honor stated clearly the respective contentions of the plaintiff and the defendant, and it appears that the fact in dispute was whether the defendant made a representation as to the net profits of the business or as to the gross profits, the plaintiff contending that she was induced to enter into the contract by reason of the statement by the defendant that the net profit of the business per month was $300, and the defendant contending that his statement was that the gross profit was $300 per month.

This being true, his Honor could not do otherwise than charge the jury that if the representation made was as contended for by the defendant they should answer the issue "No," and this is the effect of the part of the charge excepted to.

His Honor charged the jury, in reference to the contention of the plaintiff, that "The false representation relied upon in this case is that the defendant represented to the plaintiff that this livery business he then and there proposed to sell to plaintiff was paying to him at the time of the sale, and had been prior to that time, the sum of $250 or $300 profit.  That is the false representation which is relied upon by this plaintiff—that the defendant made that representation to her.  The burden is on the plaintiff to show that he did"; and with reference to the contention of the defendant, that "The defendant contends, gentlemen, that you ought to answer the first issue 'No.'  He contends, in the first place, that he made no false representation; he did not tell her—told her nothing from which she could infer he was making a profit of $200 or over; but he testified what he told her was that the income from the business, the gross income, was $300, and he says that is true, and he had been having an income of $300 and that he had been having that on an average for the last two years prior to that time.  So he contends, in the first place, that it wasn't any false representation made by him.  That he stated the truth, the facts as they were, and that the plaintiff misconstrued what he said, thinking that he meant that the profits were as she contends, when he was saying that it was the gross income."

No exception was taken to this part of the charge, and the case was tried upon the theory that this correctly presented the position of the plaintiff and the defendant.

The question discussed upon the oral argument, as to the correctness of the statement that "there is no evidence that his gross income was not as stated by him," is not embraced in the assignments of error, nor is it referred to in the brief of the appellant.

The charge of his Honor impresses us as being more favorable to the plaintiff than she was entitled to, because upon a careful reading of her evidence it does not appear that she testified that the defendant made any representation as to the profit which the defendant had made or was making out of the business, except she did say, after the statement by the defendant that the business would pay for itself in six months, she asked if she could also have a living out of it, and the defendant replied that it was doing as well as that.

She does not say in her testimony that the defendant stated that he had made and was making $300 per month, and the only representation she says the defendant made was that the business would pay for itself in six months, which is not the representation alleged in the complaint.

It is not necessary to consider the correctness of that part of the charge referred to in the third assignment of error, as the plaintiff cannot in any event have rescission of the contract as long as the finding of the jury upon the first issue stands.

The other assignment of error is merely formal.

No error.